*JOHN HENRY SPREEN ET AL. V. REGINA SANDMAN.

1. CONSTRUCTION OF A WILL IN WHICH THE TESTATOR GIVES ALL HIS PROPERTY TO HIS WIDOW.

A testator, by his will, gave to his widow all of his estate, real and personal, after the payment of his debts; but then provided that she was not to divide, or allow his *real estate* to be divided, until his youngest child reached the age of twenty-five years. If all of his children (daughters) were then happily married, his widow, if then living, might sell a certain parcel of the real estate, and divide the proceeds equally among them, and keep the balance during her life-time for herself; with other provisions authorizing her, in her discretion, to keep all of the real estate together during her life-time. In an action brought by the minor children of a deceased daughter of the testator, before the youngest child of the testator had reached twenty-five years, and against the widow, and to which action the other heirs at law of testator, and the devisees and legatees under his will, were parties, alleging that the widow had never elected to take under the will, and that, contrary to her rights under the will, (or by law, if she had not elected to take under the same), was appropriating to her own use, the whole of the personal estate, after the payment of the debts, and the rents of all the real estate; and praying that as to said personal property and rents, the court hold and decree that she hold the same as trustee of the children of the testator. *Held:* 1st, That by the terms of said will, the said widow took the personal estate absolutely.

2. RIGHTS OF WIDOW UNDER SUCH WILL.

That until the youngest child of the testator, arrives at the age of twenty-five years, and until the said real estate, which she was then allowed to sell, was or should be sold, the widow was entitled to the rents and income of the whole of the real estate of the testator, for her own use.

3. ELECTION OF WIDOW.

The petition not setting out facts which show that the widow, after being duly cited for that purpose, had failed to elect to take the provisions made for her by the will, and was therefore improperly converting any part of said estate to her own use, or that, if she took under said will, she was dealing otherwise with said estate than she was authorized by the will to do, it does not, in connection with other averments thereof, hereinbefore mentioned, state a good cause of action against said widow, or any of the defendants, and a demurrer thereto was properly sustained.

ERROR to the Court of Common Pleas of Hamilton county.

SMITH, C. J.

The question in this case is this : Did the court of common pleas err in sustaining the demurrer of the defendant, to the petition of the plaintiff, and in dismissing the action.

It was brought by the four minor children of Anna M. Spreen, deceased, who sued by their next friend, against the widow, children and heirs at law and legatees under the will of Henry Sandman, if he left a valid will. The petition, filed January 5, 1885, alleged substantially, that in December, 1872, said Henry Sandman died, and was at the time of his death the owner of a large amount of personal and real property described in the petition. That he left a widow and four daughters surviving him, of whom Anna M. Spreen, who died October 5, 1878, was one. That he left a paper writing, purporting to be a will, which was admitted to probate in this county, January 4, 1873, and that Regina, his widow, qualified as the administrator of his estate with the will annexed. That she immediately entered into the possession of the whole estate of her husband, claiming to own it absolutely, and has appropriated the personal property and rents and income of the real estate to her own use, and has refused to render an account to the probate court of her administration. The plaintiffs further say, that said

*Dismissed by Supreme Court for want of preparation, October 13, 1891.

37 C. C.    1

paper so probated, was *not* the last will of said Henry Sandman, and that the widow never elected to take under the same, according to the statute, and therefore is only entitled to dower in the real estate, and to her distributive share of the personalty.

But they say, that if the court should hold said will to be valid, then they allege that Regina did not take the whole of said property absolutely, but that it only gave to her the legal title thereto, in trust for the children of the testator. And they ask the court to so adjudge and find, and that Regina be compelled to account to them for their share of said personal property, and the income of the real estate received by her. And that, if it should appear that the trust declared by the will is so indefinite and uncertain, that the court cannot ascertain the objects and nature thereof and decree its execution, that the court will adjudge the legal effect of said paper, and the rights of the parties under it; or if it be found that it is not the will of the deceased, or that his wife never elected to take under it, that the court in that event, will settle the rights of the parties. And it asks for all other equitable relief. A copy of said paper admitted to probate, is set out in the petition.

The court of common pleas sustained a demurrer to the petition, and dismissed the action, and this judgment the plaintiffs seek to have reversed.

Though there are allegations in the petition, that the paper writing named, was not the will of Sandman, we think it clear from its general scope, that it was *not* a petition brought under the statute to contest it as the will of Sandman—the language used as to this, was a mere statement of a legal conclusion, without setting out any facts which justify it; and even if admitted by a demurrer or by a failure to deny it, would amount to nothing, and could not be the basis of a decree finding it was not the will of the testator.

Looking at the whole petition, we think it evident that it was an action brought, as indorsed on the back of the petition and in the precipe and on the summons, " to declare a trust, and for equitable or general relief." If this be so, it cannot be held as claimed by defendants' counsel, that the demurrer should be sustained, on the ground that the action was not brought within two years from the probate of the will. And if it is an action to enforce a trust and determine the rights of the parties under the will, the ground alleged in the demurrer, that there is a misjoinder of actions, is not well taken. It is but a single cause of action.

The demurrer also sets up as a ground, that it is an action to construe the will of Sandman, and that under the averments of the petition, the plaintiffs had no right to bring it, without complying with the provisions of sec. 6202, which requires the trustee first to be called on to file such a petition. The case of Cassidy v. Hynton, 44 O. S , 530, decides that an action to enforce a trust, is not governed by that section, and "that plaintiffs are not to be impeded in the lawful pursuit of their rights, because they ask a construction of a will."

We are led then to the consideration of the question, whether the petition stated a cause of action against the defendants, or either of them. If it did, the judgment of the court was wrong. And this depends upon the meaning to be given to the will of the testator.

It was drawn, as appears from the recital in it by the testator himself—a person evidently without skill in matters of that kind—by a German, and one who was not familiar with the idioms of our language, and probably unaccustomed to writing it. And it is certainly a matter of difficulty to arrive at a satisfactory conclusion as to his intention in every particular, and the disposition he desired to make of the large estate owned by him at his death. It reads as follows :

"All Man are lyable to Die and after I am Gone, I wish the following to be—fullfilled and complyed with.

"After my Death all my honest Debts—shall be Paid, and whatever there is Left I will the whole of it to my Present wife Regiene Sandman Shee shall not deveide or allow to be deveided my Real Estate before the yungest child is

twenty-five (25) years of age, if my children by that time are all maried and have Good and faithfull Husbands, then Regina Sandman if she is then living may sell the fifth street—Quaker Lot Property, and divide it *equally* among them and keep the Ballence during her Lifetime for herself, but if she, should have any doubts about them being able or willing to keep it together, or so that the or any one of them would squander it unnessarily or reclisly, then in case of that kind she may) take that part of that Childs Property or money buy real estate for it and will it to my Grand Children for them to hold it until the yungest one is of age. . But if my Present wife Regiena Sandman those not see fit to devide the above property by that time then she may keep it together during her Lifetime.

"If my Children which are all Girls should all get married, and Die without having aney Children themselves left behind or Living, then her Husband shall onley Receive one third of her part of the Divedent from my property.

"If my wife Regiene Sandman should dye early or before my yungest Child living where of the above age then i would name as—Adminestrators and gardines over my Children to Carry out the forgoing, G. H. Sandman my Brother and Louis Schnier my Brother Law if the are Living and here so that the can attend to it at the time, if one or the other of the above could not or would not do it then i next name Henry Dunholter and next my Son in Law Wm. C. Spreen, two of the above to attend to it at one time and in rotation as above

"Bonds not necesserry for my wife Regiene Sandman, but for her followers

"The above is my Last will and Testament written by myself on the fifteenth Day of May One thousand Eight Hundred and Seventy.

JOHN HENRY SANDMAN."

"We the undersigned Certify that John Henry Sandman is now in his full sense and mind, and always has been to our knowledge

J. B. WINDLER<br>LOUIS SCHNEIR"

We think so much is clear, viz.: that he intended to give to his wife, absolutely, the whole of his personal estate after the payment of his debts. The first devise or bequest after providing for debts is in this language: "And whatever there is left, I will the whole of it to my present wife Regina Sandman." This standing alone would give her the *entire estate* in such balance. And so far as the personal estate is concerned, we see no language in the will which in the slightest degree limits the bequest thus made to her.

But in our judgment it is different as to the real estate. Immediately following the clause just quoted is this language: "She shall not divide, or allow to be divided, my real estate before the youngest child is twenty-five years of age ; if my children by that time are all married and have good and faithful husbands, then Regina Sandman, if she is then living, may sell the fifth street, Quaker lot property and divide it *equally* among them, and keep the balance during her lifetime for herself."

This, and other provisions of the will convince us, that it certainly was not the intention of the testator, that she was to have more than a life estate is any part of it, but on the contrary that even if she sold the Quaker lot (said to be the most valuable of all the real estate) and divided it among the children, that she was to have only a life estate in the residue. And further that it was his intention that his children should have the fee in the whole of the real estate in equal parts, subject, however, to the interest in the same given to his widow (if any), and to the discretion and control of the land given to her, and to his executors after her death as specifically set out in the will : or if the will leaves any part of the remainder undevised, that the children of course take it as his heir-at-law, subject to the dower of the widow therein. .

Was any interest in the real estate devised to the widow, and if so, what? On this point too we think the decision of the case of Cassidy v. Hynton, before referred to, throws much light. In many of its features it was not unlike the

case at bar.   The will in that case bequeathed to his widow " all of his property, real and personal, to be solely under her care and management, in trust for the benefit of mine and her children. . She may distribute it at any time and in any manner she may think proper."

These were the only provisions of the will, and it made no *express* provision as to the income of the estate during the life of the widow—as the will under consideration in this case makes none to Regina Sandman, up to the time of the sale of the Quaker lot property, and the division of the proceeds equally among his children, if in her discretion, she sees proper to do so.   In the *Hyndon case* the widow took under the will, and qualified as administratrix with the will annexed, but made no inventory of the personal estate—took possession of the whole of it claiming the absolute title to it, and receive the rents, income and profits therefrom for her own use, and disposed of a large part of the property to one of the four children.   The court held, that the whole property having been put into her care and the legal estate given to her for that purpose, with no disposition made of the income, that such income was hers, and that it must be held that it was his intention to dispose of the whole estate, and to provide for all those entitled to his bounty." * * * "That it-could not reasonably be supposed that the husband intended to impose upon the wife, the burden of a strict technical trust, thus making her liable not only for what she should *actually* make the property earn, but for what with due care she *might* have made it earn."

But in consideration of the facts disclosed, that the widow in that case, was not only applying the rents and profits of the estate to her own use, as the court said she was authorized to do, but was dealing with the land, (the fee of which was devised to her children in equal shares), as if it were her own, selling it and giving the proceeds to her children in such proportions as she saw proper, the court held that she was violating the terms of the trust, and that the petition made a good cause of action against her.

For substantially the same reasons assigned by the court, for holding that the widow, in that case, was entitled to the rents and income of all the property bequeathed, during her life, we think that Mrs. Sandman is entitled to the use and income of the real estate left by her husband, until the division is made which was contemplated by his will, or at least, until it *ought* to be made.   For if this is not the case, she would simply have to hold and manage it for the sole benefit of those to whom the rents would go; and this for nearly twenty years, for the will was admitted to probate in 1873, and it is conceded that the youngest child has not yet arrived at the age of twenty-five years, and the division of the real estate, which she was allowed to make at the time, cannot *now* be enforced, even if it is not *thereafter*, in the sound discretion of his widow. And the property itself, being by this will given to his widow until its division or sale, and there being no express devise of the proceeds arising therefrom until the division is made, we think that it must be held, that it was his intention that his wife should have the use and income of the real estate as her own.

It is alleged in the petition, as a ground of recovery, that the widow never elected to take under the will of her husband, in pursuance of the statute.   If, after being duly cited, as therein provided, she had failed to make her election within one year after the service thereof, it may be true, as claimed, that she would not be entitled to the provision made for her by the will, but would only be entitled to her dower in the land, and to such share of the personal estate as she would be entitled to by law, in case her husband had died intestate.   And if this fact had appeared upon the petition ; that is, that she had been so cited, and had then failed to make her election to take under the will, in view of the other allegations, that she was appropriating all of the personal property to her own use, which would be in violation of the rights of the plaintiffs, the petition might have been good as against a demurrer.   But such facts do not appear ; and in addition to this, there is ground to believe that it states such facts as show that

there was an election in fact, by the widow, and which would entitle her to stand as if she had elected in court in due form. Holding as we do, that Mrs. Sandman is the absolute owner of the personal estate, and of the income of the real estate until the division contemplated by the will is, or ought to be made, is any case made on the petition against Mrs. Sandman or any defendant? We think not. It only charges that she has appropriated to her own use, the personal estate and the income of the real estate. She had a right, we think, so to do,. There is. no allegation that she has sold, or in any wise encumbered or jeopardized the real estate, or acted in any manner contrary to her right and duty as the holder of the real estate; and we think that the judgment of the court in sustaining the demurrer to the petition, was right and should be affirmed.

Judge Mallen and W. C. Spreen, the next friend, in *propria persona*, for plaintiffs in error.

Judge D. T. Wright, and Rulison & Howard, attorneys for defendants in error.